Bessie HERMAN, Petitioner, Appellant,

v.

RAMSEY COUNTY COMMUNITY HUMAN SERVICES ·DEPARTMENT, et al., Respondents.

No. C3–85–528.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Lawrence M. Shapiro, Maslon, Edelman, Borman & Brand, Minneapolis, for appellant.

Tom Foley, Ramsey County Atty., Gary A. Davis, Asst. County Atty., St. Paul, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Public Welfare.

Heard, considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This case arose from a denial by respondent Ramsey County Community Human Services Department of appellant Bessie Herman's application for medical assistance. Ramsey County denied medical assistance because it determined appellant had available to her upon demand the proceeds of a probate court surcharge order in the amount of at least $75,000. Appellant claims the proceeds were not "actually available" to her.

## FACTS

In 1971, Harvey Herman (guardian) was appointed guardian of his mother, appellant Bessie Herman, then in her sixties. The petition for guardianship appointment alleged appellant was incompetent to handle her affairs due to old age. However, the guardianship was apparently created as a convenience for appellant who, although mentally competent, wished to be relieved of anxiety-inducing cares. As required, the guardian filed a surety bond in the amount of $75,000 obtained from United States Fidelity and Guaranty Company (Surety).

Appellant's assets were valued at nearly $135,000 on the date of appointment. Thereafter, the guardian made certain loans, including a $15,000 unsecured loan to appellant's daughter, and distributed gifts to himself and family members totalling more than $65,000. The gifts were made at appellant's request, however, none had probate court approval. No accounts were filed with the probate court until 1978 when the court so ordered. The final account filed in March, 1979, showed a zero balance in appellant's account.

In December 1978, appellant, who had moved to a nursing home in 1973, applied to Hennepin County for medical assistance benefits. Hennepin County required appellant to ask the donees to return the gifts. When the donees refused, Hennepin County provided medical assistance.

In December 1979, the probate court found the guardian acted unreasonably and breached his fiduciary duty by completely depleting his ward's estate. The court issued an order surcharging him $80,556.96, the amount attributed to disallowed gifts and the unsecured, uncollectible loan. The surety was surcharged $75,000, the full extent of its liability. The order further provided that if appellant filed a receipt with the probate court for the balance due, the guardian and surety may be discharged. Also in December 1979, the probate court issued an order restoring appellant to capacity.

The surcharge order was upheld on appeal to a three-judge district court appeals panel. The Minnesota Supreme Court denied appellant permission to appeal.

Hennepin County terminated appellant's medical assistance in December 1980 and subsequently sued appellant and the guardian to recover the value of the benefits given. The lawsuit was later dismissed pursuant to appellant's summary judgment motion.

In December 1981, appellant applied to respondent Ramsey County for medical assistance after moving to a St. Paul nursing home. Respondent denied medical assistance after concluding the $75,000 surety bond was a resource to which appellant had access.

In January 1984 appellant filed a receipt with the probate court for the balance due her from the guardian and the surety and obtained an order discharging them in May 1984.

Ramsey County's decision was affirmed on successive appeals to the Minnesota Department of Welfare and Ramsey County

District Court. Appellant appeals from the district court order.

## ISSUES

1. Is appellant ineligible to receive medical assistance benefits from respondent because the proceeds of an order surcharging her former guardian and his surety were actually available to her at the time of her application?

2. Did the trial court err in denying appellant's motion to present new and additional evidence?

## ANALYSIS

### I.

■ The trial court affirmed the Department of Welfare after concluding that its decision had a factual basis and was a reasonable application and interpretation of the relevant statutes. On review, however, this court must independently review the agency's decision without according any special deference to the district court's review. *Minnesota Power & Light Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 324, 329 (Minn.1983).

Our standard of review is governed by Minn.Stat. § 14.69 (1984) which provides in part that this court may reverse an administrative decision if it is affected by an erroneous interpretation of the law or is unsupported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 14.69, (d) and (e). Nevertheless, "because of an agency's expertise, its order is presumptively valid and the reviewing court should show deference to conclusions involving its expertise." *Minnesota Power & Light Co.* at 329.

■ At the time appellant applied for medical assistance from respondent, Minn. Stat. § 256B.06, subd. 1(8) (Supp.1981) provided that medical assistance may be paid for any person "[w]ho individually does not own more than $2,000 in cash or liquid assets, * * *." *See also* 12 MCAR § 2.047(C)(4)(b)(92) (now 1984 Minn. Rules 9500.0820). Personal property to be includ-

ed in determining eligibility for medical assistance includes:

> [L]iquid assets such as savings, checking account balances, cash on hand, stocks, bonds, trust funds, contracts for deed, prepaid burial contracts, cash surrender value of life insurance, motor vehicles, and other possessions which are not real property.
> *Personal property must be actually available to the applicant * * * or it cannot be considered in determining eligibility.*

Minnesota Department of Public Welfare Medical Assistance Program Manual Section IV–G–5 (1981).

Appellant claims respondent should not have considered the proceeds of the surcharge order in evaluating her eligibility for medical assistance because they were merely "allegedly anticipated future assets" and thus not "actually available" to her. Respondent contends that even though appellant did not possess the proceeds, they were available to her upon demand and thus constituted a liquid asset large enough to render her ineligible for medical assistance. We agree.

In *McNiff v. Olmsted County Welfare Department,* 287 Minn. 40, 176 N.W.2d 888 (1970), a similar argument was made involving a discretionary trust in which the applicant was a co-beneficiary. The applicant argued her interest in the trust was only an inchoate or expectant interest and not a liquid asset. *Id.* at 45, 176 N.W.2d at 892. The court rejected the applicant's narrow interpretation of the statute and held that because the applicant had the power to compel the trustee to disburse a portion of the trust assets for her benefit, the trust constituted a liquid asset. *Id.* Similarly in this case, appellant had the power at the time of her application for medical assistance, to demand payment of the proceeds of the surcharge order.

Appellant argues, however, that the actual availability of the proceeds was speculative at best. Appellant claims that because she was competent when her assets were given away and knowingly partici-

pated in such activity, she would be liable to the surety if it was required to pay the debt.

Appellant also contends that even if the surety did not have a claim against her, it would have one against her son, Harvey. *See e.g., Anchor Casualty Company v. Bird Island Produce*, 249 Minn. 137, 82 N.W.2d 48 (1957); *Willis v. Davis*, 3 Minn. 17 (Gil. 1) (1859) (holding that when a contract of suretyship is made, an obligation is implied on the part of the principal to indemnify the surety for any payment that the surety must make under the contract). In turn, appellant asserts she would be liable to reimburse her son for any payments he made to the surety. In support of this contention, appellant cites *Long v. Campion*, 250 Minn. 196, 84 N.W.2d 686 (1957) which held that where the guardian acted in good faith, on the advice of counsel, without concealing anything from the probate court, and with the approval of his mentally competent ward, he should not be liable.

Appellant's arguments are based entirely on conjecture and thus are irrelevant to this action. No litigation has taken place and appellant has ignored possible defenses available to her. For example we note that in upholding the surcharge order, a three-judge district court appeals panel found the guardian acted unreasonably in depleting appellant's estate, engaged in self-dealing, and breached his duty as a guardian, notwithstanding that he may have acted in good faith. This case is thus distinguishable from *Long*.

■ Furthermore, as respondent points out, appellant's filing of a receipt for the amount surcharged has no bearing on this case because it occurred over two years after appellant applied for benefits. In addition, the receipt was filed without consideration and thus appears to be a transfer for less than adequate consideration under Minn.Stat. § 256B.17, subd. 1 (1984). Such a transfer is grounds for denying appellant medical assistance for an extended period of time. *See* Minn.Stat. § 256B.17, subd. 4 (1984).

Thus, we hold that appellant's power to demand payment of the proceeds of a probate court surcharge order at the time she applied for medical assistance constituted a presently available liquid asset and rendered her ineligible for such government assistance. Her subsequent efforts to dispose of the asset do not affect this result.

## II.

At the district court hearing on this matter, appellant requested the opportunity to present "new and additional evidence" pursuant to Minn.Stat. § 256.045, subd. 8 (1984). The claimed new and additional evidence consists of (1) the Hennepin County District Court order dismissing the claims brought by the Hennepin County Welfare Board for the value of medical assistance paid appellant and (2) the Hennepin County Probate Court Order discharging the guardian and surety from their obligations under the surcharge order. Section 256.045 states that on appeal to the district court from an order of the Commissioner of Welfare the court "shall take no new or additional evidence unless it determines that such evidence is necessary for a more equitable disposition of the appeal."

In its order affirming the State, the trial court did not mention appellant's motion. Appellant argues the district court erred in implicitly denying her motion since the new evidence is necessary for a more equitable disposition of the appeal.

■ Ramsey County argues that because the district court order did not address appellant's motion, it is not a proper issue for appeal under Minn.R.Civ.App.P. 103.03. However, a denial of appellant's motion is implicit in the court's order and that is all that is required.

■ Minn.Stat. § 256.045, subd. 8 allows the trial court to consider new or additional evidence in its discretion. Appellant's new evidence consists of court orders pertaining to events occurring well after she applied for medical assistance and thus have no

bearing on this case. Thus we find no abuse of the court's discretion.

### DECISION

Appellant's power to demand payment of the proceeds of a probate court surcharge order at the time she applied for medical assistance from respondent constituted a presently available liquid asset and rendered appellant ineligible to receive such assistance. The trial court did not abuse its discretion by denying appellant's motion to present new and additional evidence because the evidence does not affect the outcome of this case.

Affirmed.