405 N.W.2d 432 (1987)
Rosalyn BROOKS, Appellant,
v.
RAMSEY COUNTY COMMUNITY HUMAN SERVICES DEPARTMENT, State of Minnesota Department of Human Services, Respondents.
No. C9-86-2181.
Court of Appeals of Minnesota.
May 12, 1987.
Tricia DeVries, Certified Student Atty., Steven D. Jamar, William Mitchell Law Clinic, St. Paul, for appellant.
Tom Foley, Ramsey County Atty., Nancy B. Nager, Sp. Asst. County Atty., St. Paul, *433 for Ramsey County Community Human Services Dept.
Hubert H. Humphrey, III, Atty. Gen., Michael R. Cohen, Sp. Asst. Atty. Gen., St. Paul, for State of Minn. Dept. of Human Services.
Heard, considered and decided by POPOVICH, C.J., and HUSPENI and MULALLY,[*] JJ.

OPINION
POPOVICH, Chief Judge.
This appeal is from a trial court order affirming termination and overpayment of Aid to Families with Dependent Children (AFDC) benefits. Appellant seeks reinstatement of AFDC benefits and abatement of overpayment charges because excessive funds forming basis for termination were held in trust for children until age 18 and legally unavailable to meet their daily needs. We affirm.

FACTS
Appellant Rosalyn Brooks is a single mother of twin children, Ryan and Riana, born in 1983. That same year appellant's aunt, Marilyn Josephs, loaned appellant $5000 for household necessities. When appellant attempted to repay the loan, Josephs refused the money stating in a letter dated September 1984:
Enclosed is monies to help with the house or whatever purpose needed.
I do want you to understand that this money, should any be left over, be put in a Certificate of deposit for Ryan and Riana not to be cashed until they reach the age of 18.
Should said certificate be cash [sic] in before said time, these monies plus interest are to be returned to me.
A few weeks later appellant used the funds to purchase a Minnesota State Bank certificate of deposit (CD) no. 22407 in the names of appellant, Ryan, or Riana. In November 1984 appellant lost her job and in June 1985 appellant began receiving AFDC benefits.
The following November respondent Ramsey County Human Services Department (county agency) discovered appellant's CD through a quality control review finding. Because the CD funds exceeded the maximum $1000 AFDC eligibility limit, the county agency notified appellant her AFDC benefits would terminate November 30, 1985. Prior to termination, appellant cashed the CD and purchased a new CD no. 23881 in the names of Josephs, Ryan or Riana.
In December 1985, the county agency notified appellant of AFDC overpayment from June to November 1985 totaling $2150. Appellant appealed both the termination and overpayment to respondent State Department of Human Services.
On February 6, 1986, a hearing was held before a state appeals referee. In addition to appellant's testimony, the referee considered two additional statements submitted from Josephs, who was unable to attend the hearing due to physical disability.
The first statement dated January 6, 1986 concerned the funds' current availability and was submitted at the county agency's request. Josephs addressed the funds' availability in CD no. 23881, not the original CD no. 22407, stating:
Rosalyn cannot cash in this certificate at any time. If any attempt is made to do so  I will expect full amt returned to me at once. This is not Rosalyn's money, never was  never will be. These funds are for the twins futures only. I will not cash this certificate for her purpose.
The second statement was taken at Josephs' residence on February 5, 1986, and explained how the funds came into appellant's possession. The unnotarized statement reads:
My name is Marilyn Josephs. My address is 855 Ohio Street, St. Paul, Minnesota. I am physically handicapped and therefore am unable to testify personally at Rosalyn's AFDC hearing. In 1983, Rosalyn borrowed $5,000.00 from me to *434 take care of some of her household needs. The money was part of a settlement that I had received. In September of 1984, Rosalyn came to me with almost $5,000.00  not quite the whole amount she had borrowed  to repay me. I told her that I did not want the money back, but that I wanted it to be put in a certificate of deposit for the twins' future. I wrote a note and gave it to Rosalyn because I did not intend for the certificate to be cashed until the twins are eighteen years old. The twins are very special to me and I wanted to make sure that the money was saved for their future. That is why I wrote the last sentence of the note making the money due and payable with interest if Rosalyn tried to cash it. I wanted the money in a certificate of deposit so that it would not be mixed in with Rosalyn's ordinary money. Rosalyn does not own any of the certificate of deposit  it belongs to the twins  to be cashed only when they reach 18. I feel very strongly that I do not want this money to be used for anything except Ryan and Riana's future. The first paragraph of the note merely was meant to remind Rosalyn about how she got the money to begin with. I HAVE RECEIVED A COPY OF THIS STATEMENT AND HAVE READ IT. IT IS A TRUE AND CORRECT STATEMENT.
The referee concluded the original CD contained funds in trust for the children's benefit and not available to appellant. The Commissioner of Human Services disagreed, however, and in its June 26, 1986 amended order affirmed the county agency's termination and overpayment charges. The Commissioner reasoned a trust was not established in Josephs' September 1984 letter and therefore no legal restrictions prevented appellant's access for daily needs.
Appellant then appealed to district court. In its November 14, 1986 order, the trial court affirmed the Commissioner's decision stating:
While different persons may draw different inferences from the evidence, there is nothing to indicate that it was improper for the Commissioner to have reached the conclusions that he did based upon the reasonable inferences that can be drawn from the evidence herein.
Appeal is taken from this order pursuant to Minn.Stat. § 256.045, subd. 9 (1986).

ISSUE
Was the Commissioner's decision regarding AFDC termination and overpayment arbitrary or affected by other errors of law?

ANALYSIS
1. Judicial review of an administrative agency decision in a contested case is governed by the Administrative Procedures Act, Minn.Stat. §§ 14.63-.69 (1986). We may reverse the agency's decision if we find it is arbitrary or affected by other errors of law. Minn.Stat. § 14.69 (1986). We independently review the agency's decision without according special deference to the district court's review. Brink's, Inc. v. Minnesota Transportation Regulation Board, 373 N.W.2d 632, 635 (Minn.Ct.App. 1985), pet. for rev. denied, (Minn. Nov. 4, 1985). "[U]nless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported." Reserve Mining Co. v. Herbst, 256 N.W.2d 808, 825 (Minn.1977).
2. Minn.Stat. § 256.73, subd. 2 (1986) limits AFDC eligibility to those families whose resources do not exceed $1000. Id.; see Minnesota Department of Human Services, AFDC Program Manual at V-A(i) (1986). Resource availability for AFDC eligibility is defined in 45 C.F.R. § 233.20(a)(3)(ii)(D) (1986) which provides in part:
[R]esources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

Id. (emphasis added); see AFDC Program Manual at V(iii), (iv) (actual and legal availability similarly defined).
Pursuant to these statutory requirements, the Commissioner determined that *435 during June-November 1985 the funds comprising CD no. 22407 were available to appellant both actually, since the CD was purchased in appellant's name, and legally, since no legal restrictions prevented the funds' use for support and maintenance.
3. Appellant claims the Commissioner failed to properly apply trust law and conclude the funds were held in a trust which rendered the funds legally unavailable for daily needs. See AFDC Program Manual at V-E(iv) (legal access restricted when funds are held in trust). In In re Bush's Trust, 249 Minn. 36, 81 N.W.2d 615 (1957), the Minnesota Supreme Court outlined requirements necessary to create a trust:
[N]o trust is created unless the settlor manifests, by external expression, an intent to create that relationship which embraces the essential elements of a trust
* * * * * *
(1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights, and (3) a definite trust res wherein the trustee's title and estate is separated from the vested beneficial interest of the beneficiary.
Id. at 42-43, 81 N.W.2d at 619-20 (footnotes omitted) (emphasis added).
Once these essential elements appear from a fair construction of the evidence as a whole, the trust should, in all its parts, be sustained, under the applicable law, when it can be done by any reasonable construction of the instrument creating it.
Id. at 43, 81 N.W.2d at 620. The court stated extrinsic evidence may be received to resolve any ambiguity regarding the settlor's intent. Id. at 42, 81 N.W.2d at 620.
Appellant argues Josephs' intent to create an immediate trust in her September 1984 letter is ambiguous, but clear from her additional statements. We agree with the Commissioner, however, Josephs' additional statements do not clarify her intent to create an immediate trust in September 1984. In her January 6, 1986 letter, Josephs refers only to CD no. 23881, reasonably restricting appellant's access since the CD does not name appellant but Josephs and the children. In her February 5, 1986 letter, Josephs does attempt to explain why she initially directed the funds' use for "whatever purposes needed" by stating she wished to remind appellant "how she got the money to begin with." Josephs fails, however, to explain why she instructed a CD be established with the funds "should any be left over." This latter phrase in particular reasonably suggests Josephs intended appellant first use the funds as needed and deposit the remaining balance in a CD.
Similarly, because appellant was initially free to spend the funds, the exact amount of the alleged trust funds was uncertain and appellant's interest in the funds was inseparable from that of the children. The trust therefore fails for lack of a definite trust res.
The Commissioner's reasonable inferences from the evidence establish the essential elements of a trust were not present at the time the trust was allegedly created. Therefore, the Commissioner's conclusion the funds were actually and legally available to appellant for the children's support and maintenance during June-November 1985 is not arbitrary or affected by other errors of law. Because appellant's available funds exceeded the AFDC eligibility limit, the Commissioner properly terminated her AFDC benefits and assessed overpayment during the specified period. See, e.g., McNiff v. Olmsted County Welfare Department, 287 Minn. 40, 176 N.W.2d 888 (1970) (medical assistance applicant rendered ineligible due to excessive funds).

DECISION
The Commissioner's decision to terminate appellant's AFDC benefits and charge for June-November 1985 overpayment was not arbitrary or affected by other errors of law.
Affirmed.
NOTES
[*] Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.