**In the Matter of the WELFARE OF Kilayna SAYLES.**

**No. C5–86–2081.**

Court of Appeals of Minnesota.

June 9, 1987.
Review Granted July 31, 1987.

Thomas L. Johnson, Hennepin Co. Atty., Janeen E. Rosas, Asst. Co. Atty., Minneapolis, for appellant.

Jeffrey A. Hassan, Minneapolis, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

This appeal is from the trial court's determination that respondent's minor settlement fund is not an available resource for the purpose of determining eligibility for medical assistance. We reverse.

## FACTS

Kilayna Sayles was born on June 4, 1972. Due to complications arising during her delivery at birth, she suffered anoxia (oxygen deprivation) resulting in severe mental retardation and cerebral palsy. She is non-

ambulatory and functions developmentally between the ages of six months and one year. After her birth, a legal action was instituted on her behalf against the delivering hospital and doctor and others. On December 12, 1977, she received a court-approved minor settlement of $150,000. After deduction of attorney's fees and expenses, $82,807.30 was placed in a savings account for her benefit when she reaches age 18.

In 1979 Kilayna was placed in Homeward Bound, a licensed community placement for severely retarded children. Children in such facilities and their parents have separate obligations to pay for the costs of care. Parents must contribute according to a schedule based on their ability to pay. Kilayna's mother, Sharon Sayles Belton, was assessed $60 per month as her cost-of-care contribution. These payments have been consistently delinquent, at times requiring the county to institute collection proceedings.

For Kilayna's contribution, Sayles Belton was required by Hennepin County to apply for medical assistance, which is funded primarily with federal money. In October and November 1981 the county provided her with the medical assistance application forms, but on both occasions she failed to complete the applications. In March 1982 she failed to follow through on an appointment at which she was to complete another application. Finally, on September 9, 1982, the county obtained a court order requiring Sayles Belton to apply for medical assistance by September 25, 1982.

Sayles Belton finally submitted the application on October 28, 1982. The Hennepin County Economic Assistance Department denied the application, finding that Kilayna's settlement fund was available as a resource which precluded her from receiving medical assistance under Minn.Stat. § 256B.06, subd. 1(13) (1982). Kilayna, through her guardian, did not exercise her right to appeal to the Commissioner of Human Services.

The fund having been deemed available, the county advised Sayles Belton that the money should be used for Kilayna's care. On December 27, 1982, Sayles Belton agreed to petition the district court to release the funds. She did not file the petition, however, and in July 1984 the county was forced to seek a court order requiring her to do so. After several continuances, the court ordered her to petition for release of the funds by the end of 1985.

Sayles Belton did not comply with the order. Instead, she brought a motion, in the original personal injury action, for a declaration that the money could not be released to reimburse the county for its expenditures on Kilayna's behalf. The case was heard in Ramsey County District Court, and Hennepin County appeared in opposition to the motion. The court declined to grant the motion, determining that the issue should be decided by a separate declaratory judgment action or other original lawsuit, presumably because Hennepin County was not a party to the personal injury lawsuit.

Kilayna, through her mother's attorney, next brought a declaratory judgment action in the Hennepin County District Court Juvenile Division, seeking a declaration that her settlement funds were not available assets for purposes of medical assistance eligibility. Hennepin County filed its own petition for declaratory judgment in opposition and additionally requested that the court order Kilayna and her parents [1] to reimburse the county for its past expenditures on Kilayna's behalf.

The juvenile court granted Kilayna's motion, ruling that the trust fund was not a liquid asset under Minn.Stat. § 256B.06. Pursuant to the county's request for reconsideration, the court amended its order to require Kilayna's parents to pay their past and ongoing assessed contribution for her cost of care. The county appeals from the order granting Kilayna's motion for a declaratory judgment.

### ISSUES

1. Was the minor settlement fund an available asset or resource for the purpose

---

1. Sayles Belton's husband has adopted Kilayna.

of determining medical assistance eligibility?"

2. Was the county entitled to reimbursement for past payments made for Kilayna's care and treatment?

## DISCUSSION

As a preliminary matter, we address respondents' motion to strike the county's reply brief. Respondents alleged that the brief was not confined to new matters raised in their respondents' brief and that it included materials not presented to the trial court. Specifically, they objected to two portions of the county's appendix, both of which came from the Ramsey County file for this case: the petition for the settlement of Kilayna's claim and several petitions for withdrawal of funds from her minor settlement fund.

Respondents did not identify any specific points of the county's reply brief which brought up matters not raised in the respondents' brief, and we are unable to perceive any. As to the documents from the Ramsey County file, our decision is reached independently of those records and therefore we need not address respondents' objections to them.

## I

Minn.Stat. § 252.27, subd. 1 (1986), specifically provides that "[w]henever any child who has mental retardation * * * is in 24 hour care outside the home * * * in a facility licensed by the commissioner of human services, the cost of care shall be paid by the county of financial responsibility * * *." Under Minn.Stat. § 256B.06, subd. 1(13) (1986), "[m]edical assistance may be paid for any person * * * who individually does not own more than $3,000 in cash or liquid assets, or if a member of a household with two family members * * * does not own more than $6,000 in cash or liquid assets * * *."[2] The trial court found that Kilayna's minor settlement fund was not a liquid asset under the statute

and therefore ruled that she was eligible for medical assistance. For several reasons, we disagree.

The procedural history of this case is unduly complicated. Although the posture of the case before the trial court was that of a declaratory judgment action, as a practical matter the court was asked to review the Hennepin County Economic Assistance Department's determination that Kilayna was not eligible for medical assistance. For such an administrative decision to be reversed, it must be

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986); *see Brooks v. Ramsey County Community Human Services Department*, 405 N.W.2d 432 (Minn. Ct.App.1987) (affirming an administrative decision that terminated AFDC benefits because the recipients had available funds exceeding the statutory limit).

 Here the juvenile court made none of these findings. In the absence of such findings, the court did not meet the standard of review needed to reverse an agency determination.

Pursuant to its rulemaking authority, the Minnesota Department of Human Services has promulgated rules instructing local agencies in the administration of the federal medical assistance program. These rules have the force and effect of law. Minn.Stat. § 14.38, subd. 1 (1986). DHS rule 9500.0820, subp. 2E, provides that "[a] trust fund is subject to the personal property limitations mandated under applicable state law unless it can be affirmatively demonstrated that such fund cannot be

---

**2.** Under the 1982 version of the statute, which was in effect when Kilayna's application for medical assistance was originally denied, medical assistance was not available to any person who individually owned more than $2,000 in cash or liquid assets or, if a member of a two-person household, owned more than $4,000 in cash or liquid assets.

made available to meet the individual's medical needs."

■ This rule places the burden of proof on the recipient to demonstrate affirmatively that the fund in question cannot be made available. There was no such demonstration by respondents; in fact, the affidavit of a senior Hennepin County social worker indicates that Sayles Belton has successfully petitioned the Ramsey County District Court to release funds for medical needs on several occasions.

Instead of applying DHS rule 9500.0820, the trial court determined that the rule was not in Kilayna's best interests, as required by federal law.[3] The court gave three reasons for this conclusion. First, the court felt that the rule was "certainly unfair to the child since the trust was both created and made unavailable by court order." Second, the court stated that the fund was established in an attempt to make the child whole again, so it was not in her best interests to have to use it for medical assistance. Third, the court asserted that the fund had been established in order to "look out for the best interest of the child," and therefore it would be "both unreasonable and not in the best interest of the child" to make the fund available and terminate Kilayna's medical assistance.

The court's analysis rests on the conclusion that it would not be in Kilayna's best interests to find her ineligible for medical assistance. Such a reading of the federal "best interests" requirement would render the medical assistance eligibility requirements meaningless, because it would seldom, if ever, be found in the recipient's best interests to be denied assistance. The federal law requires only that state rules be consistent with the child's best interests.

By failing to petition the district court to release Kilayna's minor settlement funds to pay for her medical needs, Sayles Belton has made it impossible to determine whether the funds are available for that purpose. Her failure to file such a petition consti-

tutes a continuing violation of the trial court's order of October 4, 1985, which required her to apply for a release of the funds by the end of 1985. Moreover, the history of the actual use of the fund, as related in the aforementioned affidavit, indicates that it has been made available on several occasions for similar uses. Sayles Belton has successfully petitioned the court to release funds in the past to pay medical expenses, purchase a van and equip it with a wheelchair lift, develop a home therapy room, and furnish Kilayna's room. The affidavit also indicates that Sayles Belton has withdrawn funds in order to satisfy her parental cost-of-care obligations to Hennepin County. Since these withdrawals were authorized by the district court, it would also seem likely that the fund would be made available to pay Kilayna's own obligations.

Finally, our holding is consistent with *McNiff v. Olmsted County Welfare Department*, 287 Minn. 40, 176 N.W.2d 888 (1970). In that case the medical assistance recipient, Mildred McNiff, was an invalid confined to a nursing home. Her medical assistance was cancelled when the county discovered that she was the joint beneficiary, along with her mentally retarded daughter, of a $22,000 discretionary trust established pursuant to her husband's will. The trial court found that the trust was discretionary in nature and that McNiff therefore did not have access to the money.

The supreme court reversed, holding that the trust was an available resource precluding McNiff from receiving medical assistance. After determining that the trust was not entirely discretionary, the court gave two reasons for its holding. First, the court determined that McNiff's interest in the trust was a liquid asset when viewed in light of the purpose of the medical assistance statutes:

The term "liquid assets" cannot, without doing injustice to the purpose of the medical assistance program as stated in

---

**3.** Under 42 U.S.C.A. § 1396a(a)(19) (1987), "[a] State plan for medical assistance must * * * provide such safeguards as may be necessary to assure that eligibility for care and services un-

der the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients."

§ 256B.01, be interpreted as narrowly as respondent contends. Such purpose is to provide "[m]edical assistance for needy persons whose resources are not adequate to meet the cost of such care * *." Those persons with adequate resources are not entitled to medical assistance. We cannot in good conscience hold that a testator may place assets in a discretionary trust of the type present in the instant case and thereby remove such assets from consideration when the resources of a beneficiary are being determined for purposes of receiving medical assistance.

*Id.* at 44–45, 176 N.W.2d at 892 (citation omitted).

Second, the court found it significant that a private trust was not among those assets specifically exempted from consideration under the statutes:

> As a further aid to interpreting the medical assistance statutory provisions, mention should be made of § 256B.07, which lists certain property items which are not to be considered as resources available to meet medical needs when liquidation would cause undue hardship. Since a private trust is not among the items mentioned, we conclude that the legislature intended trust assets to be included among the available resources of potential recipients.

*Id.* at 45, 176 N.W.2d at 892.

 Although *McNiff* did not involve a minor settlement fund, its reasoning and holding nonetheless apply here. Minor settlements, like private trusts, are not among the enumerated assets that are not to be considered available resources. Minn.Stat. §§ 256B.06, subd. 1(13)(a); 256B.07. Under Minn.Stat. § 645.19 (1986), "[e]xceptions expressed in a law shall be construed to exclude all others." In the absence of any compelling authority to the contrary, the fact that minor settlement funds are not specifically excepted from considera-

tion as available resources is dispositive. *See also Brooks*, 405 N.W.2d at 433–34 (holding that a gift of $5,000 was an available resource for the purpose of determining eligibility for AFDC benefits).

**II**

Hennepin County's claim for reimbursement is based on Minn.Stat. § 252.27, subd. 2 (1986), which provides:

> Responsibility of the child for the cost of care shall be up to the maximum amount of the total income and resources attributed to the child except for the clothing and personal needs allowance * * *. Reimbursement by the parents and child shall be made to the county making any payments for care and treatment.

Under this statute, it is clear that the county is entitled to reimbursement for the payments it has made for Kilayna's care and treatment, because this court has determined that her funds are an available resource. The county also is entitled to reimbursement for the funds that Kilayna's parents have withdrawn to pay their own cost-of-care obligation to Hennepin County, because such costs are to be paid out of the parents' income or assets, not the child's.[4]

**DECISION**

A minor settlement fund is an available resource for the purpose of determining eligibility for medical assistance.

When the county provides for a mentally retarded child's cost of care in a licensed, 24-hour facility, the county is entitled to reimbursement from the child and the child's parents, pursuant to Minn.Stat. § 252.27, subd. 2.

Reversed.

---

4. Although the trial court ordered Kilayna's parents to reimburse the county in the amount of $3,777.42, this reimbursement apparently related to their parental obligations. The exact language of the trial court's amended order stated that Sayles Belton and her husband "are hereby ordered to reimburse Hennepin County for court-ordered costs of care for arrearages for [Kilayna] in the sum of $3,777.42." The court did not further explain the source of this assessment, nor is it discussed in any of the briefs before this court.