In re Appeal of DECISION OF COMMISSIONER OF HUMAN SERVICES IN the APPEAL OF Lillian FLYGARE FOR MEDICAL ASSISTANCE.

No. A06–559.

Court of Appeals of Minnesota.

Dec. 19, 2006.

Christopher E. Sandquist, Gislason & Hunter, LLP, Mankato, MN, for appellant Lillian Flygare.

Kenneth R. White, Assistant County Attorney, Nicollet County Attorney's Office, St. Peter, MN, for respondent Nicollet County.

Mike Hatch, Attorney General, Robin C. Vue–Benson, Assistant Attorney General, St. Paul, MN, for respondent Commissioner of Human Services.

Considered and decided by KLAPHAKE, Presiding Judge, ROSS, Judge, and HARTEN, Judge.*

## OPINION

KLAPHAKE, Judge.

Appellant Lillian Flygare, through her son and attorney-in-fact Marcus Flygare, challenges the denial of her application for medical-assistance benefits. Her application was initially denied after respondent Nicollet County determined that she has assets available from a trust established by her deceased husband. Following a hearing, an appeals referee recommended affirming the county's decision; that recommendation was adopted by respondent Commissioner of Human Services. On appeal, the district court affirmed the commissioner's determination of ineligibility.

Because we conclude that the trust is a support trust under Minnesota law, it is an available asset for purposes of determining appellant's eligibility for medical assistance. And, because the trust provision restricting the trustee's ability to make payments if appellant becomes eligible for public assistance is unenforceable as against public policy under Minn.Stat. § 501B.89 (2004), appellant can compel the trustee to provide for her support. We therefore affirm the district court's determination that appellant is ineligible to receive medical-assistance benefits.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

On August 20, 1993, appellant's husband, Ronald Flygare, executed his last will and testament. The will provided that if appellant survived him, a portion of his estate, designated as the "Marital Share," would be paid directly to appellant; the marital share consisted of the amount of the estate that was allowed to pass tax free because it qualified for a marital deduction. The will further provided that the remaining assets of the estate designated as the "Family Share" would be deposited into a testamentary trust.

Ronald Flygare died on December 17, 1993. As provided by the will, the marital share of decedent's estate was distributed to appellant outright. The family share was placed in trust, with appellant and her son, Marcus Flygare, appointed as trustees.

By 2004, appellant had less than $3,000 in personal assets remaining and because her health had deteriorated, she required additional care. On August 26, 2004, her son, acting as her attorney-in-fact and authorized representative, applied for medical assistance benefits through the county. At the time of her application, the principal in the trust totaled approximately $300,000.

On December 23, 2004, the county notified appellant that her application was denied. The county explained that because appellant had failed to prove that the trust was unavailable, the trust was counted as an asset and put appellant over the $3,000 limit. *See* Minn.Stat. § 256B.056 (2004).

On March 15, 2005, appellant challenged the county's denial and a hearing was held before a referee. *See* Minn.Stat. §§ 256.045, 256.0451 (2004) (providing for administrative and judicial review of certain human services matters, including applications for medical assistance and setting forth hearing procedures). At the hearing, appellant's attorney argued that the trust was intended to supplement rather than supplant public assistance and that it could not be considered an available resource for purposes of medical-assistance eligibility. The referee concluded that the trust is contrary to public policy because its unambiguous language expressly limits any payment from the "Family Share" of the trust to appellant "in the event she would be eligible for assistance under any government funded program." *See* Minn.Stat. § 501B.89, subd. 1 (2004) (making unenforceable as against public policy trust provisions that allow for limitation or suspension of payments if beneficiary is determined eligible for public assistance). The referee's recommendation that the county's eligibility denial be affirmed was adopted by the commissioner on May 25, 2005.

On appeal, the district court affirmed the final determination of the commissioner. In a detailed memorandum, the district court concluded that the trust clearly violates Minn.Stat. § 501B.89 because it requires the trustee to withhold distributions to appellant should she become eligible for public assistance. The court further explained its rejection of appellant's attempt to reform the trust so as to allow appellant to receive supplemental distributions from the trust while receiving public assistance. On appeal to this court, appellant concedes that the trust violates Minn. Stat. § 501B.89, but insists that when the unenforceable provision is removed and the remaining trust provisions are analyzed under common law, the trust must be characterized as a discretionary trust and therefore the assets are not available to appellant for purposes of determining her eligibility for medical assistance benefits.

## ISSUE

Did the agency err in determining that appellant is ineligible for medical assis-

tance benefits because the assets of the trust are available for her support?

## ANALYSIS

*Standard of Review*

This court will review an agency's medical-assistance eligibility determination independently, without deference to the district court's review. *Estate of Atkinson v. Minn. Dep't of Human Servs.,* 564 N.W.2d 209, 213 (Minn.1997). We may reverse only if the challenging party establishes that the agency's decision contains errors of law, is unsupported by substantial evidence, or is arbitrary and capricious. Minn.Stat. § 14.69 (2004); *In re Kindt,* 542 N.W.2d 391, 394 (Minn.App. 1996).

Issues involving the interpretation of language in a statute or in a testamentary trust are issues of law that we review de novo. *See Atkinson,* 564 N.W.2d at 213 (acknowledging that this court is not bound by agency's interpretation of governing statute, even though we often give deference to that interpretation); *Smith v. Smith,* 246 Neb. 193, 517 N.W.2d 394, 397–98 (1994). The issue of whether resources in a trust are available to a beneficiary for determining his or her eligibility for medical assistance purposes is also a question of law. *In re Carlisle Trust,* 498 N.W.2d 260, 263 (Minn.App. 1993). The trust beneficiary has the burden to establish that a trust is not an available asset. *Id.*

*Enactment of Minn.Stat. § 501B.89*

Minnesota courts have long recognized that placing assets in a trust for the support of another person but withholding consideration of those resources for that person's medical assistance eligibility is generally disfavored as against public policy. *McNiff v. Olmsted County*

*Welfare Dep't,* 287 Minn. 40, 44–45, 176 N.W.2d 888, 892 (1970). The broad policy is clear: persons who have the means should pay for their health care and not shelter available resources in order to enrich their heirs. *See Kindt,* 542 N.W.2d at 398.

In 1992, the Minnesota legislature enacted Minn.Stat. § 501B.89, to solidify its position concerning trusts that were structured to limit payments in cases where a beneficiary was eligible for public assistance. 1992 Minn. Laws ch. 513, art. 7, § 129. In particular, this statute states that

> a provision in a trust that provides for the suspension, termination, limitation, or diversion of the principal, income, or beneficial interest of a beneficiary if the beneficiary applies for, is determined eligible for, or receives public assistance or benefits under a public health care program is unenforceable as against the public policy of this state, without regard to the irrevocability of the trust or the purpose for which the trust was created.

Minn.Stat. § 501B.89, subd. 1 (2004).

The statute was further amended during the 1993 legislative session to allow a narrow exception for "supplemental needs" trusts, which are designed to assist people with disabilities when public assistance programs would fall short of meeting their basic needs and reasonable living expenses. Minn.Stat. § 501B.89, subd. 2. To qualify as a special needs trust, the person must be disabled when the trust is created, the trust's general purpose "must be to provide for the reasonable living expenses and other basic needs of a person with a disability when benefits from publicly funded benefit programs are not sufficient to provide adequately for those needs," and the trust "must contain provisions that prohibit disbursements that would have

the effect of replacing, reducing, or substituting for publicly funded benefits." Minn.Stat. § 501B.89, subd. 2(d).

Minn.Stat. § 501B.89, including the 1993 amendments, applies to all trusts created after July 1, 1992. Because the trust at issue here was created in 1993, it is subject to this statute.

*Flygare Trust Provisions*

In relevant part, the trust provides:

D. The FAMILY SHARE shall be transferred to my trustees ... and shall be administered and distributed as follows:

*First:* The net income of this trust shall be paid to my spouse in quarterly or other convenient installments; provided that if my trustee, Marcus R. Flygare, determines that my spouse has adequate other income, said trustee may withhold all or any part of that income and may distribute all or any part thereof to and among my children and their issue in whatever proportions are deemed advisable by my said trustee. Any net income which is not so distributed shall be accumulated and added to principal for reinvestment.

*Second:* In addition to the benefits hereinbefore provided for my spouse, my trustee, Marcus R. Flygare, acting alone and without my spouse for the purposes of this subdivision ... may in his sole and exclusive discretion during the time this trust is being held for the benefit of my spouse, withdraw installments of principal from this trust from time to time and pay the same to or for the benefit of my spouse as my trustee, Marcus R. Flygare, deems necessary and advisable in order to provide for the proper support and maintenance of my spouse; provided, nevertheless, that no such sums of principal or income shall be paid to or applied for the benefit of my spouse, except for the assets available to the trustee, in the event my spouse would be eligible for assistance under any government funded program and in such event, no such trust funds shall be so expended, and to or for the benefit of my children, for their support and maintenance.

Appellant concedes that certain language in the trust violates Minn.Stat. § 501B.89, subd. 1, and cannot be given effect. Appellant insists that the offending language should simply be stricken or deleted from the trust document and that the settlor's intent should be reevaluated without that stricken language. Appellant argues that reconsideration of the trust document without the stricken language makes it clear that the settlor intended the trust to be a discretionary trust, not a support trust, and that its assets should be deemed unavailable to appellant for purposes of determining her eligibility for medical assistance.

While the parties offered different analyses of the issues, at oral arguments appellant and the commissioner agreed that the initial focus should be on the type of trust involved: if the trust is a true discretionary trust, its assets are not available for purposes of determining eligibility for medical assistance and the analysis would end there; but if the trust is a support trust, its assets are available and Minn. Stat. § 501B.89 makes any provisions to the contrary unenforceable.[1]

The issue of whether a trust is a support trust or a discretionary trust is generally an issue of law that we can de-

---

**1.** The county, however, took a slightly different stance, one with which we do not entirely agree. The county asserts that if Minn.Stat. § 501B.89, subd. 1, applies, then the trust assets are available regardless of whether the trust is a discretionary or support trust.

termine de novo by examining the "four corners of the instrument." *McNiff,* 287 Minn. at 43, 176 N.W.2d at 891; *see In re Fiske's Trust,* 242 Minn. 452, 460, 65 N.W.2d 906, 910 (1954) (absent ambiguity, intention of settlor is ascertained from trust instrument in its entirety). A support trust directs the trustee to distribute trust income or principal as necessary for the support and maintenance of the beneficiary; a discretionary trust, on the other hand, gives the trustee complete discretion to distribute all, some, or none of the trust income or principal to the beneficiary as the trustee sees fit. *Carlisle,* 498 N.W.2d at 264 (citing Restatement (Second) of Trusts §§ 154, 155 (1959)).

 The trust here includes language giving the trustee some discretion, but that discretion is limited: the trustee is directed to act as he "deems necessary and advisable to provide for the proper support and maintenance of my spouse." While the trustee maintains discretion to determine the total amount and perhaps the extent of proper support and maintenance, he must consider appellant's basic needs and has no discretion with regard to making expenditures to meet those basic needs. *See McNiff,* 287 Minn. at 43, 176 N.W.2d at 891. The clear purpose of this trust was to insure that appellant's basic needs are met: she thus has the ability to bring an action to compel the trustee to make payments as necessary to provide for her proper support and maintenance. *See United States v. O'Shaughnessy,* 517 N.W.2d 574, 577 (Minn.1994) (even when vested with complete discretion, trustee cannot violate settlor's intent or trust's purpose without committing abuse of discretion). We therefore conclude as a matter of law that this trust is a support trust rather than a discretionary trust.

Appellant relies heavily upon *Carlisle* and *In re Horton,* 668 N.W.2d 208 (Minn. App.2003), two cases involving trusts cre-

ated prior to 1992 and enactment of Minn. Stat. § 501B.89, subd. 1. In *Carlisle,* 498 N.W.2d at 262, the trust expressly excluded payments for the basic necessities of life—food, clothing, and shelter—and the trustee was under no obligation to make any payments to the beneficiary. As a result, this court concluded that the trust was discretionary. *Id.* at 264–65. In *Horton,* 668 N.W.2d at 214, the trust provided that the trustee "may pay" amounts necessary to provide for the proper support and maintenance of the donor or his family. Nothing in the trust required that the trustee determine the needs of the beneficiaries or insure that those needs were met, and the entire document was in the permissive form. *Id.* at 215. As a result, this court concluded that the trust was discretionary. *Id.* at 214–15.

Here, the trust requires the trustee to consider appellant's needs and make payments to meet those needs. Nothing in the trust gives the trustee discretion to ignore appellant's needs or to refuse to make payments to provide for her basic support. Accordingly, we distinguish this trust from the trusts in *Horton* and *Carlisle.* We therefore conclude that because the trust is properly characterized as a support trust, the agency did not err in determining that it is an available asset for purposes of determining appellant's eligibility for medical assistance.

## DECISION

We affirm the determination that appellant is not eligible for medical assistance benefits. The county properly determined that the trust of which she is a beneficiary is an asset that is available to provide for her support.

**Affirmed.**