COUNTY OF RAMSEY, Respondent,

v.

Jeffrey WILSON, personally and as legal guardian of T.(F.)W., Appellant.

No. C5-94-1056.

Court of Appeals of Minnesota.

Jan. 17, 1995.

Tom Foley, Ramsey County Atty., Kathryn A. Santelmann, Asst. County Atty., St. Paul, for respondent.

Louise A. Bruce, Michelle E. Perrige, Louise Anne Bruce Attorneys & Counsellors at Law, St. Paul, for appellant.

Considered and decided by PETERSON, P.J., and NORTON and SHORT, JJ.

## OPINION

PETERSON, Judge.

Appellant Jeffrey Wilson argues that the district court erred in holding that an adoption subsidy is a resource attributable to the child that must be used to reimburse the county for the cost of care provided to the child in out-of-home placement because (1) the subsidy is income attributable to the parent that is exempt from the reimbursement requirement and (2) the decision improperly modified the adoption subsidy agreement. We disagree and affirm.

## FACTS

Appellant Jeffrey Wilson adopted T.(F.)W. in 1987. The child's adoption was subsidized. *See* Minn.Stat. § 259.40 (1986) (under adoption subsidy program, state may pay adoption expenses and monthly subsidy to person who adopts child who meets eligibility requirements).[1] In the adoption subsidy agreement, Wilson agreed to submit an annual affidavit to the Commissioner of Human Services certifying that T.(F.)W. remained in his care and that the need for the subsidy continued, to notify the Commissioner of the

---

1. In 1993, the legislature substituted the phrase "adoption assistance" for the word "subsidy" in Minn.Stat. § 259.40. 1993 Minn.Laws 1st Spec. Sess. ch. 1, art. 3, §§ 32–39.

child's absence from home due to court action, and to notify the Commissioner of any other change that could affect the amount or duration of the subsidy. Wilson has received monthly subsidies from the state since the adoption.

T.(F.)W. was in voluntary out-of-home placement with respondent Ramsey County for two months in 1990 and one month in 1991. T.(F.)W. was in court-ordered out-of-home placement with the county for three months in 1991, seven months in 1992, and five months in 1993. The total cost to Ramsey County of the child's care was $41,720.82.

In 1990, the county required Wilson to complete a Ramsey County Support and Collections Juvenile Court Financial Investigation form.[2] In the fall of 1993, the county sent a bill to Wilson seeking reimbursement for part of the cost of his son's out-of-home placement. When Wilson refused to pay, the county sought a declaratory judgment that Wilson, personally and as legal guardian of T.(F.)W., owed the county $7,310 in reimbursement for the cost of the child's out-of-home placement. The $7,310 figure represented the sum of the adoption subsidies that Wilson had received during the months that his son was in out-of-home placement.[3] The court granted summary judgment requiring Wilson to pay the county the $7,310 in adoption subsidies that he received during the months that T.(F.)W. was in out-of-home placement.

## ISSUES

I. Did the district court err in determining that the adoption subsidy is a resource attributable to the child?

II. Did the district court's decision improperly modify the adoption subsidy agreement?

## ANALYSIS

On appeal from a summary judgment, we must examine the record to deter-

mine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In the present case, no material facts are in dispute. We need not give deference to a district court's decision regarding a question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

Citing *In re Welfare of M.B.P.*, 473 N.W.2d 389, 390 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991), the county first argues that abuse of discretion is the proper standard of review of a decision that a resource is attributable to a child for purposes of reimbursing a county for the cost of a child's out-of-home care. We disagree. In *M.B.P.*, this court stated that Minn.Stat. § 540.08:

> provides money or assets in a minor settlement fund are *not available* to the child until released by the court. Therefore, it is within the trial court's discretion to determine whether the money should be released to the child. If not released by the trial court, then the minor settlement funds cannot be considered attributable to the child under Minn.Stat. § 252.27, subd. 2b. Moreover, if not attributable to the child, the minor settlement funds cannot be used to reimburse the county for community service expenditures.

*Id.* at 391 (emphasis in original) (footnote omitted). Thus, whether to release a minor settlement was the discretionary decision referred to in *M.B.P.*

In the present case, the issue is whether an adoption subsidy is attributable to a child under Minn.Stat. § 252.27, subd. 2b (1990) and Minn.Stat. § 260.251, subd. 1(b) (1990 & 1992). This is a question of statutory interpretation. Interpretation of a statute is a question of law subject to de novo re-

2. Wilson admitted in his brief that Ramsey County required him to complete this document and included a copy of the document in his appendix.

3. The county also sought to require Wilson to use part of T.(F.)W.'s annuity funds to reimburse it

for the cost of the child's placement. The district court held that the annuity funds could not be used to reimburse the county and the county has not appealed this decision.

view. *Schumacher v. Ihrke,* 469 N.W.2d 329, 332 (Minn.App.1991).

▆▆▆ The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16 (1992). "[C]ourts must adhere to the statute's clear language, unless doing so would be inconsistent with the legislature's manifest intent." *Pathmanathan v. St. Cloud State Univ.,* 461 N.W.2d 726, 728 (Minn.App. 1990). If a statute is ambiguous, then the legislature's intent must be determined by examining the need for the law, the circumstances of its enactment, the purpose of the statute, the prior law, the consequences of an interpretation, the legislative history and administrative interpretations of the law. Minn.Stat. § 645.16.

When a child is in court-ordered out-of-home placement,

> [t]he court shall order, and the county welfare board shall require, the parents or custodian of a child, while the child is under the age of 18, to use the total income and resources attributable to the child for the period of care, examination, or treatment * * * to reimburse the county for the cost of care, examination, or treatment.

Minn.Stat. § 260.251, subd. 1(b).

▆▆▆ The county also can seek reimbursement from a child for the cost of care provided to the child in a voluntary out-of-home placement. Minn.Stat. § 252.27, subd. 2b. The child's responsibility

> for the cost of care shall be up to the maximum amount of the total income and resources attributed to the child.

*Id.*

Wilson argues that the district court erred in determining that the adoption subsidy was income attributable to the child. Wilson claims that the adoption subsidy is income attributable to the parent and that Minn. Stat. § 252.27, subd. 2a(a) (1990 & 1992) prevents the county from ever seeking reimbursement from a parent for the cost of the child's care in out-of-home placement when "the child's adoption is subsidized according to section 259.40." *Id.*

None of the statutes at issue in this case specify whether the adoption subsidy is a resource attributable to the child or to the parent for purposes of reimbursing the county for the cost of care provided to the child in an out-of-home placement. *See* Minn.Stat. § 252.27, subd. 2b (voluntary out-of-home placement); Minn.Stat. § 259.40 (1990 & 1992) (adoption subsidy program); Minn. Stat. § 260.251, subd. 1(b) (court-ordered out-of-home placement).

However, for purposes of calculating the child's reimbursement obligation for the cost of care provided in a court-ordered out-of-home placement, Minn.Stat. § 260.251, subd. 1(b) provides:

> Income and resources attributable to the child include, but are not limited to, social security benefits, supplemental security income (SSI), veterans benefits, railroad retirement benefits and child support.

▆▆▆ The adoption subsidy is similar to the resources deemed to be attributable to the child in Minn.Stat. § 260.251, subd. 1(b) because none of these payments would be made if there were no child. Given this similarity between the adoption subsidy and the resources that Minn.Stat. § 260.251, subd. 1(b) deems to be attributable to the child, we conclude that the adoption subsidy also is a resource attributable to the child.

Further, a parent who adopts a child under the adoption subsidy program is required to submit an annual affidavit to the Commissioner of Human Services stating that the adopted child remains under his care and that the need for the subsidy continues. Minn.Stat. § 259.40, subd. 3; *see also* Minn.R. 9560.0092, subpt. 1 (1993) (requiring annual submission of affidavit stating that child remains in parent's care and that need for subsidy continues). Minn.Stat. § 259.40, subd. 3 shows that payment of the adoption subsidy is contingent on the child remaining in the parent's care. Therefore, the adoption subsidy is a resource attributable to the child.

Because the adoption subsidy is a resource attributable to the child, the district court properly required Wilson to use the adoption subsidies he received during the months that T.(F.)W. was in out-of-home placement to

reimburse the county for the cost of that placement.

## II.

■ Wilson argues that the district court's order improperly modified the adoption subsidy agreement. Wilson maintains that because the adoption subsidy agreement can be modified only in an administrative proceeding, the county did not follow the proper procedures to bring this action and the district court therefore had no jurisdiction over the matter. *See* Minn.Stat. § 259.40, subd. 1 (1992) (modifications to adoption subsidy agreement shall be determined by commissioner).

But the county did not seek to modify the adoption subsidy agreement by either ending the subsidy or requiring that the subsidy be paid to the county rather than to Wilson. Instead, the county merely sought an order requiring Wilson to use the adoption subsidies he received while his son was in out-of-home placement to reimburse the county for the cost of that placement. As the county argues, this case is similar to one involving child support where the county seeks an order requiring the obligee to use any child support received to reimburse it for the cost of the child's placement rather than a modification of the support order to require the obligor to make support payments to the county.

Further, Minn.Stat. § 252.27, subd. 2b requires a child to use the resources attributable to him to reimburse the county for the cost of his out-of-home placement. Minn. Stat. § 260.251, subd. 1(b) specifically requires a court to order a parent to use the child's resources to reimburse a county for care provided to the child in an out-of-home placement. The county did not modify the adoption subsidy agreement by seeking to enforce T.(F.)W.'s statutory obligation to reimburse it for part of the cost of his out-of-home placement.

■ Wilson had the right to an administrative appeal of the county's decision that T.(F.)W. had a reimbursement obligation. *See* Minn.Stat. § 252.27, subd. 2c (1992) (parent may appeal determination of

obligation to contribute to cost of voluntary out-of-home placement under Minn.Stat. § 256.045); Minn.Stat. § 256.045 (1992) (establishing procedure for administrative review of human services matters). But when Wilson failed to bring an administrative appeal and simply refused to reimburse the county, the county properly proceeded in district court to obtain an order requiring Wilson to use T.(F.)W.'s resources to reimburse the county. *See* Minn.Stat. § 260.251, subd. 1(b)–(d) (1992) (court shall order child or parent to reimburse county for cost of court-ordered out-of-home placement); *accord* Minn.R. 9550.6226, subpt. 5 (1993) (county may institute civil action against parent who refuses to pay parental contribution).

Bringing an action in district court also was a proper method to determine whether the adoption subsidy was a resource attributable to the child. *See In re Welfare of K.S.,* 427 N.W.2d 653, 657–58 (Minn.1988) (declaratory judgment appropriate action for determining whether minor settlement fund was available to child and therefore resource attributable to child).

Finally, seeking reimbursement from Wilson and T.(F.)W. did not violate the adoption subsidy agreement. The language in the agreement stating that the Commissioner could pay the adoption subsidy to a subsequent guardian or conservator shows that the subsidy was intended to follow the child. The agreement also required Wilson (1) to state annually that the child remained in his care and that the need for the subsidy continued and (2) to notify the Commissioner of T.(F.)W.'s out-of-home placement or of any other change that could affect the amount or duration of the subsidy. This language shows that payment of the adoption subsidy was contingent on T.(F.)W. remaining in Wilson's care. Given these provisions, requiring Wilson to use the adoption subsidy paid during the months that T.(F.)W. was in out-of-home placement to reimburse the county for the cost of that placement did not violate the adoption subsidy agreement.

## DECISION

The district court properly determined that the adoption subsidy was a resource

attributable to T.(F.)W. that must be used to reimburse the county for the cost of the care it provided to the child in out-of-home placement. The order requiring Wilson to use the adoption subsidy to reimburse the county did not modify the adoption subsidy agreement. Therefore, the county followed the proper procedures to bring this action and the district court had jurisdiction over the matter.

**Affirmed.**